1. TAXATION (§ 879*)—INHERITANCE TAX—GIFTS IN CONTEMPLATION OF DEATH.
    Gifts in contemplation of death of the donor, and taxable under the transfer tax law (Laws 1892, p. 814, c. 399), providing for the taxation of gifts made in contemplation of death, are not limited to gifts causa mortis, but include gifts inter vivos, made in view of such death.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

2. TAXATION (§ 879*)—TRANSFER TAX—PROPERTY SUBJECT.
    A man 76 years old for 2 years had been under medical treatment and had been in a hospital. Within 3 weeks after he left the hospital, and about 10 days before his death, while confined to his house, he explained to his attorney that he desired to so dispose of his property as to save his son the annoyance of a will contest, and conveyed all his real estate to his adopted son. Held, that such conveyances were made in contemplation of death, and subject to a transfer tax.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

In the matter of the estate of Adolphus Price. From an order fixing inheritance tax, the executor appeals. Dismissed.

Hoadly, Lauterbach & Johnson, for petitioner.
John S. Jenkins, for State Comptroller.

BECKETT, S. This is an appeal by the executor from an order fixing tax upon the ground that certain real estate appraised at $261,-000 was included in the taxable assets of the estate. This real estate was transferred by the decedent to his adopted son, Richard Price, about 10 days before his death, and the appraiser found that the transfer was made by the grantor in contemplation of his death, and therefore taxable. The executor contends that the transfer constituted a gift inter vivos, and that it was not made in contemplation of death.

Adolphus Price was 76 years of age when he died. For about 2 years before his death he had suffered from catarrh or inflammation

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the bowels, and had been under medical treatment for that disease during that time. At the request of a specialist in diseases of the stomach and bowels he went to a sanitarium in New York City on January 17, and remained there until January 24, 1907. On the 30th of the same month he became an inmate of the German Hospital, in the city of New York, and remained there until February 6th under the care and supervision of another specialist in stomach and bowel diseases. On February 25th he sent for his attorney, and after telling him that "he didn't know when his ailment would take a turn for the worse," and explaining to him that he desired to make such a disposition of his property as would save his son the annoyance of a will contest, he executed the deeds by which he conveyed all his real estate to said adopted son. He was ill and confined to the house at that time. He died on March 7, 1907, 10 days after the execution and delivery of the deeds. The foregoing facts appear in the affidavits submitted to the appraiser by the executor.

The decisions of the courts of this state upon the subject of gifts made in contemplation of death are not entirely uniform. In Matter of Spaulding, 49 App. Div. 546, 63 N. Y. Supp. 694, and Matter of Mahlstedt, 67 App. Div. 176, 73 N. Y. Supp. 818, there is a tendency to follow the dictum of the Court of Appeals in Matter of Seaman, 147 N. Y. 76, 41 N. E. 401, to the effect that the meaning of the phrase "gifts made in contemplation of death" is to be limited, so as to only apply to that class of cases where the circumstances surrounding the giving or granting would bring such a transfer under the definition of a gift causa mortis. But such a restricted signification of the scope of the transfer tax statutes of 1887 (Laws 1887, p. 921, c. 713) and 1892 (Laws 1892, p. 814, c. 399) is scarcely in accordance with the deductions which may be drawn from the application of well-recognized rules of statutory construction. By chapter 713, p. 921, of the Laws of 1887 "transfers made or intended to take effect in possession or enjoyment after the death of the grantor" were taxable. Such transfers possessed the distinguishing characteristics of gifts causa mortis, namely, taking effect only at or after the death of the donor. In 1892 the transfer tax law was amended by the insertion of an additional clause in that part of the statute taxing transfers by gift or grant, namely, "gifts or grants made in contemplation of the death of the donor or grantor." As the statute of 1887 applied to gifts causa mortis, the amendment of 1892, extending the operation of the act to gifts made in contemplation of death, would seem to indicate an intent on the part of the Legislature to tax those gifts inter vivos which were made by the grantor in contemplation of death, and which would escape taxation under the language of the statute of 1887. It would therefore appear that, in determining whether the gift was made in contemplation of death, the courts should not be restricted to those cases where the circumstances (such as that the gift was made when the donor was in extremis, or was dangerously ill, or in danger of immediate death, or afflicted with an acute disease) would indicate the existence of those conditions necessarily requisite to the validity of a gift causa mortis, but rather that the facts and circumstances sur-

rounding the making of the gift be taken into consideration and a determination arrived at as to whether such facts and circumstances indicate that the gift was made while the donor contemplated the probability of his own death in the immediate future, or whether or not the imminence of the donor's death was in any substantial sense a direct cause of such gift. Matter of Palmer, 117 App. Div. 360, 102 N. Y. Supp. 236; Rosenthal v. People, 211 Ill. 309, 71 N. E. 1121.

In the matter under consideration the deeds to the real estate were executed by the decedent, delivered to the grantee, and duly recorded by him. It was, therefore, an absolute transfer of the real estate, and the only question to be determined is whether it was made in contemplation of the death of the grantor. To prove that property is transferred in contemplation of death is exceedingly difficult, as the only parties whose intimacy with a decedent would afford them an opportunity of being cognizant of his intentions are usually those whose interests would be served by testimony to the effect that the gift was not made in contemplation of death; and the state is therefore compelled to rely upon conclusions derived from the testimony of witnesses who are interested in disproving its contention. It is also in large measure the attempted proof of the operations of a man's mind. The only witnesses before the appraiser in the present proceeding were the grantee of the property and the attorney for the executor. The grantee is also the executor of the estate and the residuary legatee under the will, and his attorney was the legal adviser of the decedent. From the attorney's affidavit it appears that the ostensible motive which prompted the decedent to transfer the property to the grantee was the desire to save the latter from the possible annoyance and trouble which the decedent contemplated might ensue when his will was presented for probate. There is no evidence that there was any pecuniary consideration for the conveyance, and the failure of the executor to adduce such testimony may be taken as conclusive proof that there was no such consideration. The donee, if he had not acquired the land by the deeds, would have received it as a devisee. The will was executed in 1899, about 8 years before his death, and the fact that the decedent only 10 days before his death desired to make such a disposition of his property as would effectually prevent its passing to any of his relatives, except his adopted son, would indicate that the decedent at that time had such an apprehension of approaching dissolution that he must have contemplated the probability of his own demise within a very short time thereafter. He had been suffering from a chronic disease for over 2 years, and the fact that a few weeks before his death it was necessary for him to consult two specialists in that disease and remain about 3 weeks in a hospital and sanitarium under the care and supervision of the specialists would seem to indicate that the disease had progressed to such an extent that it was rapidly approaching the critical or acute stage, and that it had rendered him weak, feeble, and debilitated. It appears from the testimony that decedent himself, at the time he executed the deeds, was conscious of the fact that the disease might at any time "take a turn for the worse," and that such a change would probably be followed in a short time

by his death. As a matter of fact it did take such a turn 8 days after he used that expression, and he died 10 days thereafter.

Therefore all the facts and circumstances connected with the execution of the deeds and the transfer of the real estate lead to the conclusion that the gift was made in contemplation of death. Matter of Birdsall, 22 Misc. Rep. 180, 49 N. Y. Supp. 450, affirmed 43 App. Div. 624, 60 N. Y. Supp. 1133. The appeal should be dismissed.

Appeal dismissed.